IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

HENCIL CANNON,                          )
                                        )
                                        )
              Plaintiff,                )
                                        )
       v.                               )              1:12CV430
                                        )
BURLINGTON COAT FACTORY                 )
OF NORTH CAROLINA, LLC,                 )
                                        )
              Defendant.                )

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

       This matter is before the Court on Defendant's Motion for Summary Judgment

[Doc. #18] on Plaintiff's claims of age discrimination and retaliation under the Age

Discrimination in Employment Act ("ADEA") and North Carolina's Equal Employment

Practices Act ("NCEEPA").[1]  For the reasons that follow, Defendant's Motion for Summary

Judgment will be granted.

I.     FACTS[2]

       Defendant Burlington Coat Factory is a limited liability company in the business of

selling consumer goods, including clothing, shoes, coats, and jewelry.  On September 16,

1999, Defendant hired Plaintiff, then sixty-six years old, as a Department Manager over

---

[1] This case has been referred to the undersigned pursuant to 28 U.S.C. § 636(c).  (See Order [Doc. #12].)

coats at Defendant's Concord Mills location. (Cannon Dep. 20 [Doc. #18-2 at 4].) In early 2009, when Plaintiff was seventy-six years old, Defendant eliminated the Department Manager position as a result of restructuring, and Plaintiff became the Area Manager over the youth clothing, linens, and shoes departments. In that role, Plaintiff supervised seven to ten employees. (Id. at 28-30 [Doc. #18-2 at 9-11].) His primary responsibilities were the supervision of those employees, managing merchandise, serving customers, and sales in his departments. (Id. at 30-31 [Doc. #18-2 at 11-12].) Plaintiff reported to Angela Williams, the Merchandise Manager, and Reginald Felder, the Store Manager over Plaintiff's store**.** (Id. at 22-23 [Doc. #18-2 at 5-6]; Cawley Decl. [Doc. #18-5] ¶ 5.) Mr. Felder was supervised, in turn, by District Manager Bozena Jenc and Regional Vice President Norma Wilson. (Canon Dep. 23 [Doc. #18-2 at 6]; Cawley Decl. [Doc. #18-5] ¶¶ 6-7.)

On or about December 2 or 4, 2009, Angel Guzman, Defendant's Senior Vice President for the southeast region, visited the Concord Mills store. (Cannon Dep. 64 [Doc. #18-2 at 22]; Guzman Decl. [Doc. #18-7] ¶ 4; Cawley Decl. [Doc. #18-5] ¶ 8.) After his December visit, Mr. Guzman left a "to-do" list with the managers of the store detailing work that needed to be performed in each department, including Plaintiff's. (Cannon Dep. 64 [Doc. #18-2 at 22].) With respect specifically to Plaintiff, Mr. Guzman told Mr. Felder, the Store Manager, that Plaintiff's three departments had the lowest sales in the entire store. (Guzman Decl. [Doc. #18-7] ¶¶ 4-5.) On December 7, 2009, Mr. Guzman sent an email to

---

[2] The Court sets out the undisputed facts in the record. Any disputed facts are so noted.

Glenn Hodge, the Regional Human Resources Manager, and Louis Ansara, Senior Vice President of Human Resources for Burlington, with the subject line "RE: Hensil [sic] Cannon Store # 318" stating:

> This guy should have being [sic] addressed long ago and now we will move forward with the proper documentation. His depts were the worst in the stores and I told them he needs to be documented on the visit.
> The reason the store is broken down by area managers is due to the volume. The three areas he is responsible for produce the lowest volume in the stores so he really does not have a leg to stand on.

(Guzman Decl. Ex. 1 [Doc. 18-7 at 5].)

At least partly in response to Mr. Guzman's visit, on December 9, 2009, Mr. Felder and Ms. Williams, the Merchandise Manager, issued Plaintiff a Notice of Corrective Action detailing alleged problems with his departments, including, among other things, floor presentation, merchandise guidelines, signage, item sizing, and an excessive amount of shoe "mis-mates" (i.e., when a shoe is missing its match). (Cannon Dep., Ex. 5 [Doc. #18-4 at 13].) The Notice further provided that Plaintiff had a "hard time communicating expectations to his team to execute and enforce" the guidelines. (Id.) Plaintiff disputed the violations and refused to sign the Notice. (Cannon Dep. 66, 70-72 [Doc. #18-2 at 24, 28-30].) Also on December 9, 2009, Plaintiff met with Jill Taddeo, the Merchandise Coordinator for the Southeast Region for Shoes (Cawley Decl. [Doc. #18-5] ¶ 11; Cannon Dep. 81 [Doc. #18-2 at 35].) Ms. Taddeo outlined issues that needed to be fixed in the shoe department, provided guidance on how to maintain the area, and reviewed the shoe department procedure manual with Plaintiff. (Cannon Dep. 82-83 [Doc. #18-2 at 36-37].)

On December 15, 2009, Plaintiff wrote to Defendant's Human Resources Department asking for "inquiries that relate to retaliation, discrimination and equal opportunities" and asserting that Mr. Felder, the Store Manager discriminated against "older white employees." (Cannon Dep. Ex. 6 [Doc. #18-4 at 16].) In support of that contention, Plaintiff alleged that he was given fewer days off than other managers; that he was forced to work despite an injury he suffered on the job; that he was given less help in his department than a "female friend" of Mr. Felder received; and that his employees were taken from their proper areas in order to run the store's cash registers. (Cannon Dep. Ex. 6 [Doc. #18-4 at 16-17].) In his letter, Plaintiff also stated that, during Ms Taddeo's visit on December 9, 2009, she said, "You know that we are bringing in younger and new employees." (Cannon Dep. Ex. 6 [Doc. #18-4 at 16].) Furthermore, Plaintiff noted that he was the only manager who had received a Notice of Corrective Action after Mr. Guzman's visit, despite the fact that, according to Plaintiff, Mr. Guzman's to-do list noted fewer problems with Plaintiff's departments than with other Area Managers' departments. (Id.) Regional Human Resources Manager Glenn Hodge investigated Plaintiff's complaints and concluded, on December 29, 2009, that they were "unfounded." (Hodge Decl. [Doc. #18-9] ¶ 5.)

In February 2010, the Concord Mills store prepared for its annual inventory of stock (Cannon Dep. Ex. 8 [Doc. #18-4 at 26]), which required the stock in each department to be ticketed. (Cannon Dep. 116 [Doc. #18-3 at 8].) Because Plaintiff could not match many of the shoes in his department, Plaintiff was unable to ticket all of the stock in the shoe

department.  (Id. at 108, 116 [Doc. #18-3 at 2, 8].)  Shortly thereafter, on February 25, 2010,

Mr. Felder issued a Final Written Warning to Plaintiff for "Poor Performance."  (Canon

Dep. Ex. 8 [Doc. #18-4 at 26].)  In relevant part, that Warning provides:

> [Plaintiff] has demonstrated a lack of improvement and response to serious
> concerns with his job performance as an Area Manager for shoes, youth and
> linens department.  Merchandise and recovery standards continue to be below
> expectations as follows:
>> *floor presentation, merchandise guidelines not executed
>> *categories not in compliance
>> *recovery below standards
>> *shoe department consistently for seven months failed Shoe Checklist
> conducted by store manager and district manager
>> *excessive amounts of mismates accumulated in shoe department –
> total of 2884 pair
> [Plaintiff] failed to properly prepare for inventory.  He did not insure that all
> merchandise on the selling floor had tickets in order to take an accurate
> inventory.  Payroll consistently exceeds his budget in Youth, Shoes and Linens
> departments.
>
> [Plaintiff] has difficulty communicating expectations to his team in executing
> and enforcing satisfactory level of merchandising standards.  [Plaintiff] has
> been coached, counseled and guided by Store Manager, District Manager, and
> Merchandise Coordinators regarding maintaining merchandising standards in
> his area.  [Plaintiff] must improve his performance as an Area Manager.  He
> must follow merchandising guidelines and hold himself and his team
> accountable for performing to company expectations.
>
> Important note: Further violations will result in additional discipline up to and
> including termination of employment.

(Id.)  Plaintiff again refused to sign the Final Written Warning because, according to his

testimony, it was "not accurate."  (Cannon Dep. 103 [Doc. #18-3 at 1].)

In May 2010, Norma Wilson, Regional Vice President, visited the Concord Mills

store.  On her visit, she noted that the shoe and linens departments did not comply with

presentation standards and had sales which were below expectations. (Wilson Dep. 25 [Doc. #18-10 at 9].) A few weeks later, Ms. Wilson visited the store again and saw that the shoe department was not being maintained properly. (Id. at 54 [Doc. #18-10 at 18].) Ms. Wilson acknowledges, however, that during one of her visits, Plaintiff raised concerns regarding the allocation of payroll hours to the shoes department. After looking into that matter, Ms. Wilson concluded that the total amount of hours allocated to the store was appropriate, but that the amount of hours allocated to the shoe department should be adjusted. (Wilson Dep. 41-43 [Doc. #21-3 at 27-29].) Accordingly, she shifted some of the payroll hours from the linens department to the shoes department, in order to ensure that "standards were maintained and the growing backroom mismate problem was addressed." (Wilson Dep. Ex. ¶ 4 [Doc. #18-11 at 20]; Cannon Dep. 84 [Doc. #18-2 at 38].) Regardless, Plaintiff testified that the measure instituted by Ms. Wilson had already been taken internally. (Cannon Dep. 84 [Doc. #18-2 at 38].)

Shortly after Ms. Wilson's visit, on June 2, 2010, Mr. Felder issued a second Final Written Warning to Plaintiff. In relevant part, it states:

> [Plaintiff] continues to display a lack of leadership and does not effectively coach, counsel or motivate his team to accomplish and maintain standards within linens, youth and most notably shoes. [Plaintiff] does not review with or train his team to stay up to date with the floor presentation directives for his areas. He is not meeting the merchandise guidelines within his areas of responsibility and is not proactive in developing game plans to overcome the challenges and obstacles he faces.
>
> As a result of poor standards in linens and shoes our business has suffered in these two areas and our sales performance is significantly below the District

and Region average. Shoes down 10% YTD in Concord while the District and Region are both up 14%. Linens are down 12% at Concord and again the District and Region are both up 2%.

Based on Norma [Wilson], Bozena [Jenc], and Jill [Taddeo's] walks on May 11, 18, and 19 the shoe department was found to be total disarray. Mismates were extreme and there was no plan in place to correct, many shoes were not on display, shoes were poorly categorized and organized, the flow was not set to standard, signing was incorrect and often did not match the product featured . . . . In general a very un-shoppable department. Hours were added for an emergency recovery and additional staff was temporarily allocated to the department to bring the department into standard. [Plaintiff] has been told on a number of occasions that he must maintain acceptable presentation standards within his departments – staying abreast of and accomplishing company directives for his areas of responsibility. [Plaintiff] has indicated that he has a complete understanding of the company priorities and guidelines for his areas of responsibility. He must execute these standards with consistency.

As an executive at [Defendant], you have the responsibility for the departments assigned to you. When you have been asked to explain why your departments have not met company expectations, you have regularly externalized blame or attempted to rationalize why company standards are not set and maintained, you have not taken responsibility or ownership as a leader in a multi-million dollar location.

. . . .

This is the final discussion we will be having with you. Should you not meet expectations at anytime within the next 30 days your employment with [Defendant] will end.

(Cannon Dep. Ex. 9 [Doc. #18-4 at 28-29].)

Regional Vice President Wilson visited the store again from June 16 to June 17, 2010. At that time, she found that there were still 1700 mis-mated shoes in the shoes department and that the department "had fallen into disarray again." (Wilson Dep. Ex. 4 [Doc. #18-11 at 21].) Ms. Wilson recommended terminating Plaintiff, noting his "lack of leadership,

effectiveness and commitment to improve his performance." (Id. [Doc. #18-11 at 20-22].) On June 25, 2010, based on a decision made by Mr. Felder, Norma Wilson, Bozena Jenc, and Glenn Hodge (Felder Dep. 83 [Doc. #18-8 at 29]; Wilson Dep. at 67-69 [Doc. #18-11 at 5-7]), Mr. Felder notified Plaintiff of the termination of his employment. (Cannon Dep. 145-46 [Doc. #18-3 at 19-20].) Merchandise Manager Williams assumed Plaintiff's Area Manager duties after his termination. (Wilson Dep. 75-76 [Doc. #21-3 at 58-59].)

Plaintiff filed a charge with the EEOC on July 16, 2010, alleging age discrimination and retaliation by Defendant. On January 30, 2012, the EEOC notified Plaintiff of his right to pursue his claims in this Court. Plaintiff timely filed his Complaint on May 1, 2012, alleging that Defendant had terminated his employment on account of his age, in violation of the ADEA and the NCEEPA, and had retaliated against him for activities protected by the ADEA. Defendant now moves for summary judgment on all claims.

## II.   STANDARD OF REVIEW

A court must grant summary judgment if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Id. The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v.

Frederick Cnty. Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact."  Id. at 718-19 (citing Anderson, 477 U.S. at 247-48).  A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255.  However, a mere scintilla of evidence supporting the non-moving party's case is insufficient to defeat a motion for summary judgment.  See, e.g., Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); see also Anderson, 477 U.S. at 248 (non-moving party may not rest upon mere allegations or denials).

## III.    DISCUSSION

### A.    ADEA Claim/NCEEPA Claim

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  In order to prevail on an ADEA claim alleging disparate treatment, an employee must prove, by a preponderance of the evidence, that his age was the "but for" cause of the employer's adverse action.  Gross v. FBL Financial Services, Inc., 557 U.S. 167, 176-77 (2009).  An employee may meet this burden by providing either direct or circumstantial evidence of age discrimination.  Where the evidence of discrimination is circumstantial, the

employee may prove his claim under the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Under <u>McDonnell Douglas</u>, the employee must first present a prima facie case of age discrimination by demonstrating that "(1) he is a member of the protected class; (2) he was qualified for the job and met [his employer's] legitimate expectations; (3) he was discharged despite his qualifications and performance; and (4) following his discharge, he was replaced by a substantially younger individual with comparable qualifications." <u>Warch v. Ohio Cas. Ins. Co.</u>, 435 F.3d 510, 513-14 (4th Cir. 2006). If the employee establishes a prima facie case, the burden of production shifts to the employer to produce a legitimate, nondiscriminatory reason for the discharge. <u>Id.</u> "If the employer meets this burden, the presumption of discrimination created by the prima facie case disappears from the case and the [employee] must prove that the proffered justification is pretextual." <u>Id.</u> (quotation marks omitted). Under either approach, the ultimate burden remains with the Plaintiff to prove that he has been the victim of intentional discrimination. <u>See</u> <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 (2000). Similarly, Plaintiff's claim under the NCEEPA, N.C. Gen. Stat. § 143-422.1 *et seq.*, is evaluated in accordance with the same evidentiary standards and principles of law as the federal ADEA claim. <u>See</u> <u>Reed v. Buckeye Fire Equip.</u>, 241 F. App'x 917, 926 (4th Cir. 2007) (citing <u>N.C. Dept. of Correction v. Gibson</u>, 308 N.C. 131, 141 (1983)).

Through its instant Motion, Defendant argues that Plaintiff cannot establish a prima facie case of age discrimination because there is no genuine issue of material fact that

Plaintiff's job performance did not meet Defendant's "legitimate expectations." (Def.'s Br. [Doc. #19] at 12.) Plaintiff, in his response, argues that "substantial evidence exists that shows that the expectations were not legitimate and/or that Defendant's management specifically and intentionally thwarted [Plaintiff's] attempts to meet performance standards." (Pl.'s Resp. [Doc. #22] at 10.) Where, as here, the parties dispute the legitimacy of the expectations imposed on the employee, an employer may present evidence "defining the expectations as well as evidence that the employee was not meeting those expectations." Warch, 435 F.3d at 516. The employee may then respond with additional evidence "that demonstrates (or at least creates a question of fact) that the proffered 'expectation' is not, in fact, legitimate at all." Id. at 517. In this context, an expectation is illegitimate if it is a "sham designed to hide the employer's discriminatory purpose." Id. at 518.

Here, Defendant has provided significant evidence of its expectations for Plaintiff and Plaintiff's failure to meet those expectations through, at the very least, the three Notices of Corrective Action received by Plaintiff over a seven-month time span. These expectations included compliance with standard guidelines that applied across stores and departments, and Plaintiff conceded that he was not "100 percent" in compliance with those standards. In support of his contention that Defendant's expectations were nonetheless not legitimate, Plaintiff asserts that: (1) Defendant failed to assign enough payroll hours to the shoe department; (2) Plaintiff's employees were taken from his departments to run the cash registers; (3) Defendant failed to help Plaintiff resolve the problems with the mis-mated

shoes; (4) Plaintiff was forced to drive a truck to transfer merchandise to others stores, which took him away from his work; and (5) Ms. Taddeo commented that the company was bringing in "younger and new employees." (Pl.'s Resp. Br. [Doc. #22] at 12-13.)

As an initial matter, these arguments fail to call into questions the legitimacy of Defendants' expectations. That is, as to Defendants' expectations regarding the shoe department itself, there is no argument from Plaintiff that it was illegitimate for Defendant to expect him to maintain the department in accordance with company standards, including those related to employee management, floor presentation, and merchandise guidelines. Nor does Plaintiff suggest it was illegitimate for Defendant to expect sales in Plaintiff's departments not to significantly lag those in comparable stores.

Rather, Plaintiff's argument is that he was unable to meet those expectations given other burdens placed on him by Defendant and the resources afforded to him. Indeed, the record reflects that, during the relevant period, Plaintiff complained to Mr. Felder regarding shoe department employees frequently being called to work the cash registers and the lack of payroll hours assigned for the shoe department each month. Plaintiff also raised concerns regarding the "mis-mated" shoe problem, and was occasionally required to transfer merchandise between stores.[3]

---

[3] Plaintiff testified that, in "2009, and leading up into [the] months before [his] termination," Mr. Felder asked him to transport merchandise between stores on occasions which, in total, amounted to ten working days of time over the course of a year and a half. (Canon Dep. 42-43, 162 [Doc. #23-2 at 3-4, 14].) Plaintiff's subsequent averment that Mr. Felder "routinely" required him to transfer merchandise off site (Canon Decl. [Doc. #21-5] ¶ 5) must be rejected to the extent it is at odds with Plaintiff's earlier deposition testimony. See Hernandez v. Trawler Miss Vertie Mae, Inc., 187 F.3d 432, 438 (4th Cir. 1999) ("[A] party cannot create a

However, although Plaintiff may argue the reasonableness of what Defendant asked of him, none of Plaintiff's contentions call into question the legitimacy of Defendant's expectations.  Cf. Johnson v. Mechanics & Farmers Bank, 309 F. App'x 675, 683 n.8; Smith v. Market Biosciences Kingstree Corp., No. 4:11-3457-MGL, 2013 WL 4042159, at *3 (D.S.C. Aug. 6, 2013) (unpublished) ("[T]he fact that Plaintiff felt she was in need of help, direction, and training does not mean that her employer's expectations of her were not legitimate."); see also Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir. 1997) ("[I]t is of no business of a court in a discrimination case to decide whether an employer demands 'too much' of his workers.").  Critically, Plaintiff has presented no evidence that the "burdens" placed on him were "a sham designed to hide the employer's discriminatory purpose."  Indeed, with respect to shoe department employees covering the cash registers, the evidence indicates that employees from any department could be called to help cover the cash registers during busy times, and employees from the shoe department were often called because the shoe department was closest to the cash registers.  With respect to the payroll hours for each department, it is undisputed that the total budget for personnel hours for the Concord Mills store was determined by the corporate office, and Plaintiff was allowed to move hours from the linen department to the shoe department, both informally and formally.  With respect to the obligation to help transfer merchandise between stores, other managers also assisted with transferring merchandise between stores.  In sum, having

triable issue in opposition to summary judgment by contradicting his deposition testimony with a subsequent affidavit.").

reviewed Plaintiff's contentions in light of the evidence presented, there is no evidence that any burdens or expectations placed on Plaintiff were in any way related to his age or an effort to discriminate on the basis of age.

The only connection to age that Plaintiff presents is the alleged statement made by Ms. Taddeo: "You know that we are bringing in younger and new employees." However, this statement is an isolated remark that is relatively innocuous on its face. Cf. EEOC v. Clay Printing Co., 955 F.2d 936, 942 (4th Cir. 1992); see also Birbeck v. Marvel Lighting Corp., 30 F.3d 507, 511-12 (4th Cir. 1994). Moreover, there is no suggestion that Ms. Taddeo played any role in Plaintiff's termination, the Notices he received, or in outlining the scope of Plaintiff's job responsibilities. Finally, although Plaintiff's December 2009 letter claimed Mr. Felder discriminated against older employees, the record reflects that Ms. Wilson recommended Plaintiff's dismissal after finding that Plaintiff failed to correct previously-noted issues in the shoe department. (See Wilson Dep. Ex. 4 [Doc. #18-11 at 20-22].) There is no evidence to even suggest Ms. Wilson's decision was affected in any way by Plaintiff's age.

Accordingly, because, on the record evidence, no reasonable finder of fact could conclude that Plaintiff was meeting Defendant's legitimate expectations, or that Defendant's expectations were a sham for age discrimination, Plaintiff cannot satisfy the prima facie case

and summary judgment in favor of Defendant on Plaintiff's age discrimination claims is appropriate.[4]

B.    Retaliation Claim

Plaintiff also contends that Defendant retaliated against him for sending a letter to Defendant's Human Resources Department on December 15, 2009, requesting "inquiries that relate to retaliation, discrimination and equal opportunities" and asserting that Mr. Felder, the Store Manager, discriminated against "older white employees." (Cannon Dep. Ex. 6 [Doc. #18-4 at 16].)  As to this claim, Defendant argues that there is no genuine issue of material fact because Plaintiff "cannot show any causal connection between his complaint about his alleged treatment and his discipline and termination." (Def.'s Br. [Doc. #19] at 3.)

As with the age discrimination claim, Plaintiff's retaliation claim is subject to the McDonnell Douglas burden-shifting analysis.  To establish a prima facie claim of retaliation, Plaintiff must show (1) that he engaged in protected activity, (2) that the employer acted adversely against him, and (3) that there is a causal connection between his engagement in the protected activity and the adverse action.  See Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008).  If the employee can satisfy each element, the burden shifts to the employer to

---

[4] Even if this argument were framed in terms of the ultimate pretext inquiry as outlined by McDonnell Douglas (as opposed to an inquiry in the context of the prima facie case in the McDonnell Douglas framework), the outcome would remain the same and for the same reasons.  That is, given the lack of evidence on which to support a conclusion that Defendant's concerns over Plaintiff's performance were themselves pretextual, Plaintiff's showing simply cannot rebut the abundant evidence that his supervisors clearly described their expectations, outlined their concerns through several Notices of Corrective Action, offered Plaintiff multiple opportunities to improve his performance, and terminated Plaintiff's employment only after Plaintiff failed to resolve ongoing issues in his departments over the course of several months.

show a legitimate, nondiscriminatory reason for the adverse action.  Laber v. Harvey, 438 F.3d 404, 432 (4th Cir. 2006).  The employee must then present evidence that the legitimate reasons offered by the defendant were not its true reasons, but were mere pretext for retaliation.  Id.

Plaintiff contends that Defendant retaliated against him by issuing the Notices of Corrective Action and by ultimately terminating his employment.  Plaintiff also contends that Defendant retaliated against him by forcing him to drive the truck to transfer merchandise off site, by refusing his request for additional personnel hours for the shoe department, and by continuing to call shoe department employees to work the cash registers. As to these latter conditions (i.e., the driving of the truck, the refusal of requests for additional hours, and his employees being called to work the cash register), it does not appear that these employment obligations are "materially adverse actions" for purposes of Plaintiff's retaliation claim. (Plaintiff's Response [Doc. #22] at 16.)  In this context, materially adverse means that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination," Burlington Northern & Santa Fe Rwy. V. White, 548 U.S. 53, 64 (2006), and these ordinary employment obligations and burdens do not appear to rise to that level.  Even more importantly, these conditions pre-existed Plaintiff's December 2009 letter to Human Resources.  In fact, in his letter to Human Resources, Plaintiff complains that his employees are taken from his departments to work the cash register (Cannon Dep. Ex. 6), and, in his deposition, Plaintiff states that he was

required to drive the truck during 2009. Therefore, Plaintiff cannot show that these employment obligations were imposed in retaliation for his December 2009 letter.

As to the Notices of Corrective Action and Plaintiff's termination, any causal connection to Plaintiff's December 2009 letter is tenuous at best. Plaintiff appears to rely only on temporal proximity. In this regard, Plaintiff received his first Notice of Corrective on December 9, 2009 – nearly a week before Plaintiff's December 15, 2009 letter to Defendant's Human Resources Department. (See Cannon Dep. Exs. 5 & 6 [Doc. #18-4 at 13-17].) Plaintiff's second Notice of Corrective Action (i.e., his first Final Written Warning) did not come until February 25, 2010 – more than two months after Plaintiff's December 15, 2009 letter. (See Cannon Dep. Ex. 8 [Doc. #18-4 at 26].) Plaintiff's final Notice of Corrective Action (i.e., his second Final Written Warning) came three months after that - on June 2, 2010. (See Cannon Dep. Ex. 9 [Doc. #18-4 at 28-29].) And Defendant did not terminate Plaintiff's employment until June 25, 2010. Accordingly, even relying on mere temporal proximity, Plaintiff would be able to establish a causal connection only by the slimmest of margins. Compare Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994) (noting that an earlier case found that a four-month period between protected activity and adverse employment action constituted a sufficient causal nexus) with Pascual v. Lowe's Home Ctrs, Inc., 193 F. App'x 229, 233 (4th Cir. 2006) (finding that three to four months in that case was "too long to establish a causal connection by temporal proximity alone") and Shields v.

Federal Express Corp., 120 F. App'x 956, 963 (4th Cir. 2005) (affirming a finding that three to four months was insufficient to infer a causal connection).

Regardless, Plaintiff's retaliation claim fails because Plaintiff cannot rebut Defendant's legitimate, non-discriminatory reasons for Plaintiff's discharge and for Plaintiff's written Notices of Corrective Action. That is, problems with Plaintiff's management over his departments, and in particular the shoe department, were noted by no less than three separate individuals. Those concerns included not only the appearance of the departments, but also their performance in relation to similar departments across the region. Plaintiff argues only that he was unable to perform due to burdens placed on him by Defendant; however, nothing Plaintiff points to would call into question the legitimacy of Defendant's belief that Plaintiff was not performing adequately with the resources afforded him, and "it is the perception of the decision maker which is relevant." See Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980). Accordingly, Plaintiff's retaliation claim also fails as a matter of law.

C.       Admissibility of Portions of Ms. Wright's Declaration

As a final matter, the Court revisits Defendant's Motion to Strike [Doc. #24]. In that Motion, Defendant moved to strike certain paragraphs of the declaration of Jeanette Wright – an individual who was employed in the youth clothing department at the time Plaintiff managed that department in 2009 and 2010. Plaintiff submitted Ms. Wright's Declaration as part of his opposition to Defendant's summary judgment motion. Defendant moved to strike paragraphs 5, 6, 8, 9, 15, and 16 on the grounds that the referenced paragraphs contain

"inadmissible hearsay, opinion, and speculation." (Def.'s Mot. To Strike at 1.)[5] Pursuant to

Local Rule 7.6, this Court denied Defendant's motion, but stated that it would consider the

contentions set out in the Motion to Strike and related memoranda as part of the underlying

Motion for Summary Judgment. [6]

---

[5] Those paragraphs state as follows:

> 5.    When I was employed in Youth, the department was always maintained according to company standards. Store Manager Reginald Felder even complimented the presentation of the Youth Department on numerous occasions when Mr. Cannon was supervisor.

> 6.    I observed the Linens and Shoe departments on a regular basis and do not remember any time that the departments did not meet 'minimum standards' although the shoe department could be messy at times due to a lack of employees to work in the department.

> . . . .

> 8.    However, I remember that Mr. Cannon would often be gone driving the truck for the store when we needed him in our departments. There were times when he would be gone for multiple days at a time driving the truck.

> 9.    Mr. Cannon was a good leader and he always tried to help and motivate me and other employees in our department.

> . . . .

> 15.    I believed that there needed to be more people hired for the Shoe Department in 2009 and 2010.

> 16.    I concluded that the management was trying to force Mr. Cannon out in 2010 because management kept him out of the store delivering in the truck, because management refused to bind shoes together until after he was terminated, and because management would not assign more employees to the department.

(Wright Decl. [Doc. #21-4] ¶¶ 5, 6, 8, 9, 15, 16.)

[6] Local Rule 7.6 provides:

> Rather than filing a motion to strike, a party may assert evidentiary objections in its response or reply memorandum to factual allegations contained in memoranda or replies supporting or opposing motions to dismiss, motions for summary judgment, and other motions. If an evidentiary objection is raised in the non-moving party's response memorandum, the moving party may address the objection in its reply memorandum. The non-moving party may not file further briefing on its evidentiary objection. If an evidentiary objection is raised by the moving party in its reply memorandum, the non-moving party may file a surreply memorandum pursuant to this subparagraph within seven (7) days addressing only the evidentiary objection. The moving party may not file further briefing on its

Having now considered the Parties' arguments, the Court finds that it need not determine whether the disputed portions of Ms. Wright's declaration are inadmissible hearsay, opinion, or speculation, because, even if they were otherwise admissible, they do not weigh on the issues in dispute in Defendant's motion for summary judgment. See Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir. 2000) ("The alleged opinions of [the plaintiff's] co-workers as to the quality of her work are [] close to irrelevant." (internal quotation marks and citation omitted)); see also Smith v. City of Galax, No. 1:10CV00064, 2011 WL 3562962, at *4 (W.D. Va. Aug. 15, 2011) (unpublished) ("Although [the plaintiff] has produced statements by fellow employees affirming that she was a good employee, it is the opinion of the employer's decision-makers, and not that of her coworkers, that is relevant."); Alderman v. Inmar Enters., 201 F. Supp. 2d 532, 542 (M.D.N.C. 2002) ("In fact, the Fourth Circuit has held that when considering whether an employee met the legitimate expectations of the employer, a co-worker's opinion as to the quality of the employee's work is practically irrelevant.").

IV.     CONCLUSION

Plaintiff has failed to establish a prima facie case with respect to his age discrimination and retaliation claims, and, even if the Court were to assume that Plaintiff could satisfy the elements of a prima facie case, Plaintiff has failed to provide evidence that

---

evidentiary objection. If a party asserts an evidentiary objection in a motion to strike evidence, no reply memorandum is permitted. If a separate motion to strike is filed asserting evidentiary objections, the motion to strike may be summarily denied by the Court, and any issues instead addressed in the ruling on the underlying motion.

creates a genuine issue of material fact that Defendant's nondiscriminatory reasons for Plaintiff's discipline and termination were pretextual.

It is therefore ordered that Defendant's Motion for Summary Judgment [Doc. #18] is GRANTED and that this case is DISMISSED.

A Judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion and Order.

This, the 30th day of September, 2014.

    /s/ Joi Elizabeth Peake
United States Magistrate Judge